IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALFRED EUGENE MACHADO,

    Petitioner,                   No. CIV S-05-278 LKK GGH P

   vs.

TOM CAREY, et al.,

    Respondents.               FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is serving a sentence of 15 years to life having been convicted of second degree murder in 1983.

        This action is proceeding on one claim: breach of the plea agreement. In particular, petitioner alleges that he was told that he would do 8 years to life if he kept his nose clean. Petitioner contends that his continued incarceration violates this agreement. After carefully considering the record, the court recommends that the petition be denied.

Anti-Terrorism and Effective Death Penalty Act (AEDPA)

        The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this petition for habeas corpus which was filed after the AEDPA became effective. Neelley v. Nagle, 138 F.3d 917 (11th Cir.), citing Lindh v. Murphy, 521 U.S. 320, 117 S. Ct. 2059 (1997). The

AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. Id. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

\\\\\

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

Background Law

At the time petitioner entered his plea, he was entitled to earn day for day custody credits. In 1988, the California Court of Appeals held in In re Monigold, 205 Cal. App. 1224, 253 Cl. Rptr. 120 (1988) that inmates serving life sentences were eligible to earn only one-third custody credits.

For prisoners serving indeterminate terms, such as petitioner, conduct credits apply only to the setting of the minimum eligible parole term (MEPD), at which time the prisoner is entitled to a parole suitability hearing. In re Dayan, 231 Cal. App. 3d 184, 282 Cal. Rptr. 269 (1991). A life prisoner is usually scheduled for a parole suitability hearing within the year preceding the minimum eligible date. Cal. Penal Code § 3041. Conduct credits are not applied by the Board of Prison Terms after it sets an actual release date, after initially finding a prisoner

1 suitable for parole. 213 Cal. App. 3d at 189, 282 Cal. Rptr. at 272.

2 <u>Discussion</u>

3       In his traverse filed August 1, 2005, petitioner describes the factual basis for his

4 claim in more detail:

> Before petitioner entered a plea of guilty with the advice and assistance of my private attorney Mr. Michael C. Ciraolo I discussed all of the punishment, enhancement, credit, and parole provisions for second degree murder under Section 190, including the day for day (§ 2933) provisions that came into effect of January 1, 1983, which I was told would apply to my term of 16 years if I plead guilty to second degree murder under § 190. My understanding was that I would plead guilty to second degree murder under § 190 and I would be sentenced to a term of 15 years to life to include the credit and parole provisions of § 190 and to no more than one year enhancement for use of a gun. My attorney advised me that it would be my actions while in prison that would determine how much of the 16 years I would serve in prison. If I remained disciplinary free and complied with the specific performance requirements of Section 2930-2935 I would serve approximately 8 years in prison. My attorney assured me that this is the law in California and that I would be sentenced in accord with the plea agreement.
>
> With the above mentioned understanding and the assistance of my attorney on March 21, 1983, before the Honorable Judge Roy G. McFarland I entered a plea of guilty to second degree murder while armed with a firearm to be sentenced on April 15, 1983 by the Honorable Judge Noel Watkins.
>
> On April 15, 1983, I was sentenced in accord with my plea agreement and understanding made in open court. The Honorable Judge Noel Watkins oral pronounced sentence in pertinent part reads: The sentence, Counsel, for a violation of Section 190, second degree, is 15 years to life. That is the sentence that the People have asked for. That is the sentence that is prescribed under section 190. That is the sentence of the Court.

19 Traverse, pp. 3-4.

20       Respondent has provided the court with the minutes from March 21, 1983,

21 petitioner's change of plea hearing. Answer, Exhibit C. Apparently no transcript from this

22 hearing was prepared. The minutes state that petitioner plead guilty to second degree murder and

23 that the matter was referred to the probation officer for a report. <u>Id.</u> The minutes do not state

24 that petitioner pled guilty pursuant to a plea agreement providing for a specific sentence. <u>Id.</u> The

25 minutes state that the prosecution stated that there was insufficient evidence to establish first

26 degree murder and agreed to dismiss two remaining special allegations. <u>Id.</u>

Respondent has provided the court with a copy of the transcript from the sentencing hearing. At the conclusion of this hearing, the court sentenced petitioner to 15 years to life. As noted by petitioner in his traverse the court stated:

> The sentence, counsel, for a violation of Section 190, second degree, is 15 years to life. That is the sentence that the People have asked for. That is the sentence that is prescribed under 190. That is the sentence of the Court.

Answer, Exhibit C, sentencing transcript, p. 16.

It is clear from the record that petitioner's plea agreement did not provide for a particular sentence. Rather, petitioner plead guilty to second degree murder in exchange for the prosecution's agreement not to pursue first degree murder and to dismiss two special allegations. The fact that the court asked the probation officer to prepare a report supports this finding.

Petitioner's claim is really that he mistakenly believed that if he plead guilty to second degree murder and was sentenced to 15 years to life, he would only serve approximately 8 years based on credits he would earn if he "kept his nose clean." According to petitioner, his misunderstanding of the time he would actually serve was based on statements made to him by his counsel. Counsel's predictions were apparently based on the law in effect at the time regarding the ability of prisoners serving life terms to earn time credits and also, perhaps, the rate at which the Board of Prison Terms (BPT) was finding prisoners suitable for parole.

Although a unilateral mistake of fact basic to formation of a contract may be grounds for recision of the contract, <u>Donovan v. RFL Corp.</u>, 26 Cal. 4th 261, 278, 109 Cal. Rptr. 2d 807, 821-822 (2001), petitioner's own misreadings of that agreement or mispredictions concerning the ultimate application of that agreement under the law do not transform an otherwise clear plea agreement into a breached agreement. In other words, a unilateral mistake of contract interpretation does not void a plea agreement (contract). See <u>Hedging Concepts, Inc v. First Alliance Mortgage Co.</u>, 41 Cal. App. 4th 1410, 1420-1422 (1996) [unilateral, subjective misinterpretation of contract is not a "mistake" constituting grounds for rescission]; <u>Lawrence v. Shutt</u>, 269 Cal. App. 2nd 749, 764-765, 75 Cal. Rptr. 533, 542 (1969).

Plea agreements are measured by contractual principles, Brown v. Poole, 337 F.3d 1155, 1159 (9th Cir. 2003), including the doctrine of unilateral mistake, and when such is sufficient to rescind a contract, and when it is not, govern here.  Petitioner does not really suggest that he did not understand the precise sentence to which he agreed – he does assert that he misapprehended the manner in which the contract would be interpreted and applied according to California law.  The *prosecutor* never made a 8 year release part of the plea bargain.  The *prosecutor* never promised that petitioner would be released after a specified time.  The court never enunciated any terms which would permit the finding that an 8 year term was promised.  Thus, there is no agreement which could be specifically enforced.  In order for specific enforcement, the court would have to insert this new 8 year provision into a record devoid of this fact, and then pretend that the prosecution had agreed to it.  No provision of contract law would permit such.

Moreover, the doctrine of unilateral mistake, which would only permit recision of the agreement, does not assist petitioner.  The fact that after the plea was entered petitioner believed predictions about the future decisions of the BPT, or calculation of time credits, does not render the initial plea agreement subject to recision.  Hedging Concepts, supra.  The fact that the law regarding credits applicable to indeterminate sentences was later clarified adverse to petitioner does not void the contract.[1]

Petitioner's position, that his subjective interpretation of how his plea agreement would ultimately play out must be honored, would make plea agreements in indeterminate sentencing cases impossible.  Every prisoner would assert that his or her own unspoken beliefs about when the plea agreement called for the granting of parole are part and parcel of the plea agreement.  The prosecution would never know precisely what it had bargained for.  Petitioner's

---

[1] A different situation favoring recision might be presented in the case where a certain term of years was made a part of the agreement, or stated as a basic assumption in forming the agreement, and that assumption later proved wrong.  Here, in entering the plea agreement, no such assumption was ever made known to the prosecution or the court.

position is all the more unmeritorious when one reviews the record.

Because it is clear that petitioner's sentence pursuant to his plea bargain was 15 years to life, and that petitioner understood this, the court finds no breach of the plea agreement. The denial of this claim by the California Supreme Court was not an unreasonable application of clearly established Supreme Court authority.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 12/20/06

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

ggh:kj
mach278.157